UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
THOMAS PUGH, JR.,                                    :
                              Plaintiff,             :
                                                     :
                                                     :
v.                                                   :
                                                     :
ORANGE COUNTY CORRECTIONAL                           :
FACILITY; CARL DUBOIS, SHERIFF OF                    :
ORANGE COUNTY; MEDICAL                               :
DEPARTMENT AT ORANGE COUNTY                          :
CORRECTIONAL FACILITY; M.D. MARIA                    :
KARIMI; M.D. MCRAUFD; OFFICER                        :
MARCHINI A., SHIELD # 510; SGT. R.                   :
POTTER, SHIELD # 059; OFFICER                        :
MENDOZA, SHIELD #326; OFFICER                        :
WORSDALE, SHIELD # 489; OFFICER                      :
DESENA, SHIELD # 395; OFFICER                        :
CINTRON, SHIELD # 289; OFFICER                       :
SHANLEY, SHIELD # 302; and OFFICER                   :
PASCAL, SHIELD # 425,                                :
                              Defendants.            :
--------------------------------------------------------------x

**OPINION AND ORDER**

14 CV 4854 (VB)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/29/16

Briccetti, J.:

In this Section 1983 action, plaintiff Thomas Pugh, Jr., proceeding pro se and in forma pauperis, claims the Sheriff of Orange County, the Orange County Correctional Facility, the "Medical Department at Orange County Correctional Facility,"[1] eight corrections officers, and two physicians violated his constitutional rights by failing to protect him from another inmate and giving him constitutionally inadequate medical care.

---

[1]      Defendants claim neither the Orange County Correctional Facility nor its medical department are suable entities.  Because, as discussed below, plaintiff's claims would fail on the merits whether brought against these entities or Orange County itself, the Court need not decide this issue.

Now pending are two motions to dismiss the amended complaint (Doc. #10) pursuant to Rule 12(b)(6), (Doc. ## 34, 38), made by all defendants except "M.D. MCraufd."[2]

The Court also considers whether to dismiss the claims against M.D. MCraufd <u>sua</u> <u>sponte</u> for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).

For the reasons set forth below, the motions to dismiss are GRANTED.  Further, the claims against M.D. MCraufd are dismissed.

However, as explained below, plaintiff is granted leave to amend to the limited extent of attempting to plead a valid inadequate medical care claim with respect to the alleged failure to treat his ankle after his cast was removed.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

<div align="center">BACKGROUND</div>

I.    <u>The Parties</u>

According to the amended complaint, the parties occupied the following positions at all times relevant to this action:

Plaintiff was an inmate at Orange County Correctional Facility (the "Correctional Facility").  It is unclear from the complaint whether plaintiff was a pre-trial detainee or a convict during the relevant time period.

Defendant Carl DuBois was the Sheriff of Orange County.

Defendants Marchini, Potter, Mendoza, Worsdale, Desena, Cintron, Shanley, and Pascal (the "Corrections Defendants") were corrections officers at the Correctional Facility.  The complaint also names the Correctional Facility itself as a defendant.

---

[2]    As discussed below, M.D. MCraufd was never served and has not appeared.

Defendants "M.D. Maria Karimi" and "M.D. MCraufd" were physicians within the Medical Department at the Correctional Facility (the "Medical Department"). The complaint also names the Medical Department itself as a defendant, separate from the Correctional Facility.

II.     Factual Background

In deciding the pending motion, the Court accepts as true all well-pleaded allegations and draws all reasonable inferences in plaintiff's favor.

The following alleged facts are taken from the amended complaint and its attachments (Doc. #10), and plaintiff's affidavit opposing the motions. (Doc. #44). Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

On April 6, 2014, an unnamed inmate assaulted plaintiff on the basketball court of the Correctional Facility's recreation yard. Plaintiff claims "the[re] was no [s]upervision out in the [r]ec yard to stop the assault." (Am. Compl. at 2). Plaintiff suffered a broken ankle.

Officer Marchini saw plaintiff fall to the ground, saw he was in pain, and reported a medical emergency. All eight Corrections Defendants arrived on the scene, as did two nurses who are not parties here. The nurses determined plaintiff needed to be evaluated at the Medical Department. Officers Cintron and Shanley assisted plaintiff into a wheelchair to bring him there.

At the Medical Department, a non-party nurse examined plaintiff's ankle, and called Dr. Karimi. Together, the nurse and Dr. Karimi decided plaintiff needed to be taken to the Orange County Hospital for an x-ray examination.

At the Orange County Hospital, plaintiff was treated by hospital staff members who are not parties here. On April 7, 2014, an unnamed doctor put a cast on plaintiff's broken ankle; the cast was not applied the day of the injury because plaintiff's ankle was too swollen.

3

Approximately six weeks later (plaintiff does not give a date), unnamed Correctional Facility staff removed the cast from plaintiff's ankle, on Dr. Karimi's orders.

After the cast was removed, plaintiff's ankle still hurt and he could not walk on it, so he was "hobbling all over the jail." (Am. Compl. at 3). Plaintiff told this to unnamed staff, but the person or people to whom plaintiff spoke told him to "deal with it" and did not offer any additional treatment. (Id.). Plaintiff submitted several "sick call" notifications to the Correctional Facility but unnamed staff again told him to "deal with it" and did not treat him. (Id.). Plaintiff does not allege Dr. Karimi personally knew his ankle was still injured.

Plaintiff's medical records, attached to the amended complaint, contain progress notes related to plaintiff's broken ankle from April 6, 2014, through May 7, 2014. These notes indicate Dr. Karimi was involved generally in treating plaintiff, but do not indicate whether she was involved in the decision not to continue treating plaintiff's ankle once the cast was removed. Additionally, plaintiff's medical records are signed in various places on lines marked "provider signature" by what appears to be "MCraufd TP." Nothing in plaintiff's submissions indicate who this person is, or whether he or she was involved in either the decision to apply plaintiff's cast or to remove it after six weeks.

Plaintiff was later transferred to Bare Hill Correctional Facility ("Bare Hill"). When he reported to the medical department there, he underwent another x-ray examination. A doctor at Bare Hill allegedly told plaintiff his ankle had not healed properly and the staff at the Orange County Correctional Facility should not have removed the cast when they did.

As a result, plaintiff underwent an operation in which screws and a plate were placed in his foot to repair the damage to his ankle.

4

The amended complaint alleges plaintiff filed one grievance form with the Correctional Facility.  This grievance form is attached to the amended complaint and dated May 3, 2014.  It describes the incident on the basketball court, but does not discuss the subsequent treatment of plaintiff's ankle.  Neither the amended complaint nor plaintiff's opposition papers to these motions attach any other grievance forms.

III.   Plaintiff's Claims

The Court liberally construes the amended complaint to bring three distinct claims. Plaintiff does not specify which claims are brought against which defendants, so the Court assumes plaintiff has brought all claims against all defendants.

First, plaintiff brings a claim for defendants' failure to protect him from being assaulted on the basketball court on April 6, 2014.

Second, plaintiff brings a claim for constitutionally inadequate medical care taking place on April 7, 2014, based on the application of his cast.[3]

Third, plaintiff brings another claim for constitutionally inadequate medical care based on the premature removal of his cast and defendants' refusal to continue to treat his ankle after the cast was removed.

IV.   Procedural History

The following procedural history is relevant to the instant motions.

---

[3]      The Court construes this as a separate claim because in the amended complaint, plaintiff lists April 7, 2014, as one of the dates on which "the events giving rise to [his] claim(s) occur[red]."  (Am. Compl. at 2).

A.    Order to Amend

Plaintiff's original complaint (Doc. #2) named only the Orange County Correctional Facility and Sheriff DuBois as defendants.  The complaint asserted a claim based on defendants' failure to protect him from assault, but not based on inadequate medical treatment.

An Order to Amend issued by Chief Judge Preska on December 12, 2014, found the complaint suffered from several deficiencies.  (Doc. #7).  One such deficiency was the failure to "allege sufficient facts suggesting that correction officials were deliberately indifferent to a serious risk to his safety." (Id.).  The order explained the legal standard for plaintiff's claim and instructed him to file an amended complaint setting forth facts sufficient to show defendants' "deliberate indifference" to his safety.  (Id.).

Plaintiff's amended complaint, filed on April 20, 2015, added eleven defendants and brought new claims for inadequate medical treatment.  (Doc. #10).

B.    Service on M.D. MCraufd

Defendant "M.D. MCraufd" has never been served, and has not appeared.

On April 28, 2015, the Court issued an order enabling plaintiff to effect service on all defendants listed in the amended complaint, including MCraufd.  (Doc. #12).  The United States Marshals Service attempted to serve M.D. MCraufd, but was unsuccessful because nobody by that name works at the address plaintiff listed.[4]  (Doc. #43).

---

[4]    In this order, the Court told plaintiff he "must effect service within 120 days of the date the summons is issued" and "it is plaintiff's responsibility to inquire of the Marshals Service as to whether service has been made and, if necessary, to request an extension of time for service." (Doc. #12).  Plaintiff was further told if he had not effected service or requested an extension of time within 120 days of the issuance of the summons, "under Rules 4(m) and 41(b) of the Federal Rules of Civil Procedure, the Court may dismiss this action for failure to prosecute." The summons for M.D. MCraufd was issued on May 26, 2015, more than 120 days ago.  The docket reflects plaintiff was mailed notice of the unsuccessful service attempt.  Plaintiff has not moved for an extension of time to effect service.

C.    <u>Motions to Dismiss</u>

On August 21, 2015, the Correctional Facility and the Corrections Defendants moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. #34).

By separate motion dated August 28, 2015, "Medical Department at Orange County Correctional Facility" and Dr. Karimi moved to dismiss under Rule 12(b)(6).  (Doc. #38).

Because "M.D. MCraufd" was never served, he or she never moved to dismiss.

Plaintiff filed only one "Affidavit in Opposition to Defendants['] Motion to Dismiss," which was docketed on September 16, 2015.  (Doc. #44).  The Court construes this affidavit as an opposition to both motions.

## DISCUSSION

I.    <u>Legal Standards</u>

A.    <u>Rule 12(b)(6)</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id.</u> at 678; <u>accord</u> <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).  Nor may the Court "invent factual allegations" plaintiff has not pleaded.  Id.

B.   Sua Sponte Dismissal

When a litigant proceeds pro se and in forma pauperis, the Court "shall dismiss the case at any time if [it] determines that . . . [the case] fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2).  After a sua sponte dismissal under this statute, the Court is obligated to allow a pro se plaintiff to amend his complaint if there is a "possibility that such an amendment will result in a claim being successfully pleaded."  Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999).

C.    Prisoner Eighth and Fourteenth Amendment Violations

"There are three basic theories pursuant to which inmates customarily bring Eighth Amendment claims: (1) denial of adequate medical care; (2) unconstitutional conditions of confinement unrelated to medical care; and (3) failure to protect." Randle v. Alexander, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013).  Plaintiff invokes the first and third of these theories.  No matter the theory, however, an Eighth Amendment claim must satisfy both an objective and a subjective component.  That is, the deprivation of rights must be "sufficiently serious" and the defendant prison official must have acted with "'deliberate indifference' to the health and safety of inmates." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Section 1983 claims under these theories are based on violations of an inmate's Eighth Amendment rights if he is incarcerated following a conviction, and on violations of his Fourteenth Amendment rights if he is a pre-trial detainee.  Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009).  The applicable legal standards are the same.  Id. at 71-72.

1.    Constitutionally Inadequate Medical Treatment

The Eighth and Fourteenth Amendments require prisons to provide constitutionally adequate medical care.  In cases alleging inadequate care, the objective component requires the medical condition itself to be sufficiently serious.  A condition is sufficiently serious if it may cause "death, degeneration, or extreme pain," Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Hemmings v. Gorsczyk, 134 F.3d 104, 108 (2d Cir. 1998)), or if "the failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).  "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of

comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006) (quoting Chance v. Armstrong, 143 F.3d at 702).

To satisfy the subjective component, a plaintiff must allege the defendant had a mental state akin to recklessness, which "requires that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin v. Goord, 467 F.3d at 280 (citing Farmer v. Brennan, 511 U.S. at 836-37). A plaintiff must allege "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. at 835.

### 2.   Failure to Protect

The Eighth and Fourteenth Amendments also "require[] prison officials to take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. at 832-33). The objective component requires a plaintiff to "demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component requires the defendant prison official to have knowledge of that risk and yet "fail[] to take reasonable measures to abate the harm." Id. This right is implicated when a prison official fails to prevent an inmate from being attacked by another, despite knowing the inmate was at risk. See id.

### 3.   Personal Involvement

In any Section 1983 claim, a plaintiff must allege defendants' personal involvement in the claimed violation of his rights. Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001). In other words, a plaintiff bringing a Section 1983 claim "must plead that each

10

Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.

        4.    Municipal Liability

A municipality may be liable for deprivation of constitutional rights under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  A municipality may also be liable for inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.  See City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989).  However, a municipality's failure to train, supervise, or hire only gives rise to liability when there is an "underlying constitutional violation" by an individual municipal employee.  Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).

II.    Plaintiff's Claims

For the purposes of this motion, it does not matter whether plaintiff was a pretrial detainee or a convict, because the legal standards under the Eighth and Fourteenth Amendments are the same for all of plaintiff's claims.  See supra Part I.C.

    A.    Failure to Protect

As pleaded, plaintiff's "failure to protect" claim, based on defendants' alleged failure to prevent the assault on the basketball court, does not meet the subjective component of the test.

The amended complaint does not allege any defendant had prior knowledge plaintiff was in danger of being assaulted on April 6, 2014.  Therefore, no employee of the Correctional

Facility or the Medical Department was deliberately indifferent to plaintiff's safety.  See Hayes

v. N.Y.C. Dep't of Corr., 84 F.3d at 620.

Because no municipal employee committed an underlying constitutional violation, to the

extent the Correctional Facility and the Medical Department are suable entities (rather than

Orange County itself), plaintiff does not state a claim for municipal liability under Monell.[5]

Segal v. City of New York, 459 F.3d at 219.

Accordingly, this claim is dismissed as to all moving defendants.[6]

B.      Constitutionally Inadequate Medical Care

The amended complaint purports to bring two separate claims for constitutionally

inadequate medical care: one for the events of April 7, 2014, when the cast was put on plaintiff's

ankle, and the other for the events approximately six weeks later, when the cast was removed and

defendants allegedly refused to treat plaintiff's ankle.

Both claims fail.

As to plaintiff's claim based on the events of April 7, 2014, the amended complaint

indicates his broken ankle was treated—he was given a hard cast—and alleges no facts

suggesting he was treated inadequately.

As to plaintiff's claim that he was deprived of adequate medical care after the cast was

removed, the amended complaint does not allege personal involvement by any defendant.

Plaintiff alleges after the cast was removed, he told unnamed members of the medical staff he

was still in pain and needed further treatment, yet he was ignored.  However, because plaintiff

---

[5]      For the same reason, even if plaintiff had sued Orange County itself, he would not have a
valid Monell claim.

[6]      Because the Court dismisses the "failure to protect" claim on its merits, it need not
consider the Corrections Defendants' contention that plaintiff failed to exhaust his administrative
remedies.

does not indicate <u>which</u> members of the medical staff he told this to, or if any of these staff members are defendants in this case, plaintiff has not sufficiently alleged any defendant personally was deliberately indifferent to his medical needs.

Plaintiff does allege Dr. Karimi made the decision to remove the cast, but does not allege any facts suggesting she did so knowing plaintiff's ankle had not yet fully healed.  This, by itself, fails the subjective component of the test.  Therefore, plaintiff has not alleged Dr. Karimi's personal involvement in any behavior amounting to a constitutional violation.

Nor does the amended complaint state a claim for municipal liability.  As explained above, there was no underlying constitutional violation on April 7, 2014, relating to the application of the cast.  Therefore, neither the Correctional Facility nor the Medical Department can be held liable under <u>Monell</u>.  <u>Segal v. City of New York</u>, 459 F.3d at 219.

Even assuming plaintiff's constitutional rights were violated when he did not receive treatment after the cast was removed, plaintiff has not sufficiently alleged a <u>Monell</u> claim for this violation.  Plaintiff alleges no facts suggesting inadequate training, supervision, or hiring, or an unconstitutional policy, caused the violation of his constitutional rights.

Accordingly, these claims are dismissed as to all moving defendants.[7]

C.   <u>M.D. MCraufd</u>

Although "M.D. MCraufd" has not moved to dismiss, the Court <u>sua</u> <u>sponte</u> dismisses the complaint as to this defendant for failure to state a claim.  <u>See</u> 28 U.S.C. § 1915(e)(2).

---

[7]   Having dismissed all claims on the merits, the Court need not consider defendants' arguments that they are entitled to qualified immunity.

As discussed above, the amended complaint does not state a claim for failure to protect, or for inadequate medical treatment on April 7, 2014.  Therefore, both claims are dismissed with respect to MCraufd as well.

As for inadequate medical treatment concerning the alleged decision not to treat plaintiff's ankle after the cast was removed, this claim fails as to MCraufd because the amended complaint does not allege his or her personal involvement.  None of plaintiff's submissions explicitly allege anything against this defendant.  Although MCraufd's signature appears in numerous places in plaintiff's medical records, none of these records pertains to the decision to remove plaintiff's cast or to deny him treatment after the cast was removed.  Therefore, this claim is dismissed with respect to MCraufd.[8]

D.     State Law Claims

The Court has dismissed all claims over which it has original jurisdiction.  The amended complaint does not bring claims under state law, but to the extent the Court could construe such claims from plaintiff's complaint, the Court declines to exercise supplemental jurisdiction.  See 28 U.S.C. § 1367(c)(3).  Any state law claims are therefore dismissed without prejudice.

E.     Leave to Amend

A district court generally should not dismiss a pro se complaint for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (emphasis added) (internal quotation marks omitted).  A court must grant leave to amend

---

[8]     Because all claims against MCraufd have been dismissed for failure to state a claim, the Court need not consider whether to dismiss these claims under Fed. R. Civ. P. 4(m) or 41(b).

"unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Gomez v. USAA Fed. Sav. Bank, 171 F.3d at 796.

      1.     Failure to Protect Claim

The Court has already granted plaintiff one opportunity to amend his "failure to protect" claim. (Doc. #7). In the Order to Amend, the Court told plaintiff the original complaint failed to allege any defendant's deliberate indifference to the risk plaintiff would be assaulted, and explained how to fix this substantive deficiency. Yet, as explained above, the amended complaint still fails to allege deliberate indifference.

Accordingly, the Court declines to grant plaintiff another opportunity to amend his complaint as to the failure to protect claim.

      2.     Constitutionally Inadequate Medical Care

      a.     Claim Based on Events of April 7, 2014

The Court also declines to grant plaintiff an opportunity to amend his claim for inadequate medical care based on the events of April 7, 2014. Even reading the amended complaint liberally, the Court does not find any allegations suggesting this is a valid claim that is merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, the Court finds repleading would be futile, because the problems with this claim are substantive, and supplementary and/or improved pleading will not cure them. Specifically, plaintiff alleges no facts suggesting he was deprived of adequate medical care on this date. Indeed, a cast was applied to his broken ankle.

      b.     Claim Based on Alleged Failure to Treat Ankle After Cast Was Removed

However, the Court does grant plaintiff an opportunity to amend the claim for inadequate medical care based on the alleged failure to continue to treat his ankle after the cast was

removed, because there is some "indication that a valid claim might be stated." <u>Cuoco v. Moritsugu</u>, 222 F.3d at 112.

Plaintiff is directed to follow the instructions set forth below regarding the filing of a second amended complaint.

First, plaintiff is directed to state in his second amended complaint: (i) which members of the medical staff denied him medical treatment or told him to "deal with it" when he told them his ankle was still injured <u>after</u> the cast was removed; and (ii) what, if anything, he did to exhaust this claim administratively.  Plaintiff should attach to his second amended complaint any grievances he filed based on defendants' failure to treat his ankle <u>after</u> the cast was removed.

Second, plaintiff is advised that the amended complaint should only list as defendants the members of the staff who denied him medical treatment or told him to "deal with it" after plaintiff complained his ankle had not yet healed.  If plaintiff does not know their names, he should say what specific jobs they held, on what days he spoke with them, and any other information that might help the Correctional Facility to determine their identities.  <u>See</u> <u>Valentin v. Dinkins</u>, 121 F.3d 72, 76 (2d Cir. 1997).

Third, plaintiff is reminded that any factual allegation in the second amended complaint must be true to the best of his knowledge, information, and belief.  <u>See</u> Fed. R. Civ. P. 11(b)(3).  Because the second amended complaint will completely replace the amended complaint, plaintiff should include in the second amended complaint all information necessary to state a claim against each defendant for inadequate medical care based on the failure to treat his ankle <u>after</u> the cast was removed.

Finally, plaintiff shall <u>not</u> include claims alleging defendants failed to protect him from being assaulted on the basketball court, or claims alleging defendants provided inadequate

medical care at any time <u>before</u> his cast was removed.  Those claims are dismissed with prejudice.

Plaintiff is directed to utilize the Second Amended Complaint form attached to this Opinion and Order, and to mail the completed form to the <u>Pro</u> <u>Se</u> Clerk at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601.

### CONCLUSION

Defendants' motions to dismiss are GRANTED.

The Court <u>sua</u> <u>sponte</u> dismisses all claims against defendant "M.D. MCraufd."

Plaintiff is granted leave to file a second amended complaint, which must be filed by April 15, 2016.  If plaintiff does not file a second amended complaint by that date, this case will be dismissed with prejudice.

If appropriate, after the second amended complaint is filed, the Court may issue an amended Order of Service to enable plaintiff to effect service on any defendants who have not already been served.

Defendants' time to move, answer, or otherwise respond to the second amended complaint shall be governed by the Federal Rules of Civil Procedure.

The Clerk is instructed to terminate the motions.  (Doc. ##34, 38).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Dated: February 29, 2016
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_____
_____
_____
_____
_____
_____
_____
_____

*(In the space above enter the full name(s) of the defendant(s).  If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names.  The names
listed in the above caption must be identical to those contained in
Part I.  Addresses should not be included here.)*

**SECOND**

**AMENDED
COMPLAINT**

under the Civil Rights Act,
42 U.S.C. § 1983

Jury Trial:  ☐ Yes    ☐ No
(check one)

___ Civ. _____ (   )

---

**I.      Parties in this complaint:**

A.      List your name, identification number, and the name and address of your current place of
confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper
as necessary.

Plaintiff's      Name_____
                 ID#_____
                 Current Institution_____
                 Address_____
                 _____

B.      List all defendants' names, positions, places of employment, and the address where each defendant
may be served.  Make sure that the defendant(s) listed below are identical to those contained in
the above caption.  Attach additional sheets of paper as necessary.

Defendant No. 1      Name _____ Shield #_____
                     Where Currently Employed _____
                     Address _____
                     _____

Defendant  No. 2      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____


Defendant  No. 3      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____


<div style="border:1px solid black">Who did what?</div>

Defendant  No. 4      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____


Defendant  No. 5      Name _____ Shield #_____

Where Currently Employed _____

Address _____

_____


## II.   Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.


A.      In what institution did the events giving rise to your claim(s) occur?

_____

_____


B.      Where in the institution did the events giving rise to your claim(s) occur?

_____


C.      What date and approximate time did the events giving rise to your claim(s) occur?

_____

_____

_____


<div style="border:1px solid black">What happened to you?</div>

D.      Facts:_____

_____

_____

_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| **Was anyone else involved?** |
_____
_____
_____
_____
_____

| **Who else saw what happened?** |

### III.   Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____
_____
_____
_____

### IV.   Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Administrative remedies are also known as grievance procedures.

A.      Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

   Yes _____   No _____

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____

_____

_____

B.    Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

      Yes _____    No _____    Do Not Know _____

C.    Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

      Yes _____    No _____    Do Not Know _____

      If YES, which claim(s)?

      _____

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

      Yes _____    No _____

      If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

      Yes _____    No _____

E.    If you did file a grievance, about the events described in this complaint, where did you file the grievance?

      _____

      1.    Which claim(s) in this complaint did you grieve?

            _____

            _____

      2.    What was the result, if any?

            _____

            _____

      3.    What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.

            _____

            _____

            _____

            _____

F.    If you did not file a grievance:

      1.    If there are any reasons why you did not file a grievance, state them here:

            _____

            _____

            _____

*Rev. 01/2010*                                4

_____
_____
_____

2.    If you did not file a grievance but informed any officials of your claim, state who you informed, when and how, and their response, if any:

_____
_____
_____
_____
_____
_____

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

_____
_____
_____
_____
_____
_____
_____
_____

Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

## V.    Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). _____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

*Rev. 01/2010*

_____
_____
_____

**VI.     Previous lawsuits:**

<table>
<tr><td>On these claims</td></tr>
</table>

A.     Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____   No _____

B.     If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below.  (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.     Parties to the previous lawsuit:

Plaintiff _____
Defendants _____

2.Court (if federal court, name the district; if state court, name the county) _____
_____

_____3.     Docket or Index number _____

_____4.     Name of Judge assigned to your case_____

5.     Approximate date of filing lawsuit _____

6.     Is the case still pending?  Yes _____  No _____

If NO, give the approximate date of disposition_____

7.     What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____
_____

_____

<table>
<tr><td>On other claims</td></tr>
</table>

C.     Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

Yes _____     No _____

D.     If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.     Parties to the previous lawsuit:

Plaintiff _____
Defendants _____

2.     Court (if federal court, name the district; if state court, name the county) _____
_____

_____3.     Docket or Index number _____

_____4.     Name of Judge assigned to your case_____

5.     Approximate date of filing lawsuit _____

6.   Is the case still pending?  Yes _____  No _____

If NO, give the approximate date of disposition_____

7.   What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____
_____
_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ____ day of _____, 20___.

Signature of Plaintiff        _____

Inmate Number             _____

Institution Address         _____

_____

_____

_____

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this _____ day of _____, 20___, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:   _____